## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

REGINA SIDIK, individually and on behalf of all others similarly situated,

*Plaintiff*,

vs.

BANK OF AMERICA, N.A.

*Defendant*.

**Civil Action No.** 3:24-cv-678

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff REGINA SIDIK ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following for her Complaint against Defendant Bank of America, N.A. ("Bank of America" or "Defendant"). Plaintiff makes the following allegations, upon information and belief based on, among other things, the investigation of counsel, and review of public documents.

## PRELIMINARY STATEMENT

1.      Legislatures around the nation have statutorily prohibited companies from taking advantage of customers regarding consumer contracts. Specifically, consumer fees are considered unfair if the consumer does not receive a commensurate benefit from the fee. In other words, the consumer must have a practical opportunity to avoid the fee.

2.      This concept is applicable to the banking sector. Financial institutions earn profits for a plethora of reasons, including charging fees for any service they render. Specifically, a financial institution can charge fees to consumers who deposit checks into an account, but the check does not clear and therefore bounces.

1

3.      While this concept, in theory, seems unproblematic, financial institutions have abused this privilege. They have victimized depositors who have no way of knowing whether a check he or she deposits will bounce. Therefore, charging depositors a fee for a bad check by which they possess no prior knowledge about is unjust.

4.      Plaintiff brings this action on behalf of herself, and all similarly situated persons who were charged $12 for trying to deposit checks, that unbeknownst to them were bounced on or around March 1, 2024 (the "Blanket Fees").

5.      This action is brought to remedy various violations of law in connection with Defendant's breach of contract, implied covenant of good faith and fair dealings and unjustly enriched actions.

6.      Specifically, Bank of America routinely charges and collects "Returned Item Chargeback Fees." By administering such fees, Bank of America singles out customers; by penalizing them for faulty checks such customers had no hand in issuing. This has left Plaintiff and other consumers in financial turmoil, having to obtain external resources to sort through hefty penalties.

7.      The allegations herein are based on personal knowledge as to Plaintiff's own experience and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed Plaintiff

class, on the one hand, and Defendant, on the other, are citizens of different states.

9. This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself to this District's jurisdiction and authority, given Defendant's minimum contacts within this District through Defendant's extensive financial services throughout this District, and is registered to conduct business in the State of North Carolina.

10. Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, given that Defendant conducts financial services throughout the United States and within this District.

## PARTIES

11. Plaintiff Regina Sidik is a citizen of the State of South Carolina and resides in Columbia, South Carolina.

12. On several occasions, Plaintiff deposited checks into her Bank of America bank account.

13. On March 1, 2024, Plaintiff deposited a check into her bank account but was charged with a blanket $12 fee because the check bounced.

14. Defendant Bank of America, N.A., is a subsidiary of Bank of America Corporation. Bank of America N.A, is a multinational financial services institution engaged in the business of providing retail banking services to consumers and businesses, including Plaintiff and members of the putative Class. Defendant operates banking centers throughout the State of South Carolina as well as other states. Bank of America is headquartered in Charlotte, North Carolina.

15. In 2022, Defendant made over $42 billion in noninterest revenue.[1]

---

[1] See Form 10-K for Bank of America Co. (2022) at 28. Available at:
https://investor.bankofamerica.com/regulatory-and-other-filings/annual- reports/content/0001140361-23-

# FACTUAL ALLEGATIONS

## I.    BANK OF AMERICA IMPOSED A BLANKET "JUNK FEE" ON ALL RETURNED CHECKS, IRRESPECTIVE OF CAUSE

16.    Returned Item Chargeback Fees are widespread within the banking industry, with most major banks and financial institutions utilizing them within a standard fee structure. However, these fees are nothing more than tools used to generate revenue at the expense of innocent depositors.

17.    The CFPB issued published Bulletin 2022-06 on November 7, 2022 (the "Bulletin").[2] The Bulletin entitled *Unfair Returned Deposited Item Fee Assessment Practices*, highlights the CFPB's concern about deceptive practices related to Deposited Item Returned Fees, specifically where fees are disproportionate to the actual costs incurred by the bank, or where customers are not adequately informed about the fees and their potential applicability.

18.    More importantly, the CFPB deemed these fees unfair under the Consumer Financial Protection Act. They held that financial institutions, like Bank of America, that charge consumers Returned Item Chargeback Fees "for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account" were unfair The Bulletin provides in relevant part:

> The Consumer Financial Protection Act (CFPA) prohibits covered persons from engaging in unfair acts or practices. Congress defined an unfair act or practice as one that (A) "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and (B) "such substantial injury is not outweighed by countervailing benefits to consumers or to competition."

---

013653/0001140361-23-013653

[2] https://www.federalregister.gov/documents/2022/11/07/2022- 23933/bulletin-2022-06-unfair-returned-deposited-item-fee-assessment-practices (last accessed June 20, 2024).

Blanket policies of charging Returned Deposited Item fees to consumers for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account are likely unfair.

Fees charged for Returned Deposited Items cause substantial injury to consumers. Under the blanket policies of many depository institutions, Returned Deposited Item fees cause monetary injury, in the range of $10-19 for each returned item. **Depository institutions that charge Returned Deposited Item fees for returned checks impose concrete monetary harm on a large number of customers**.

In many of the instances in which Returned Deposited Item fees are charged, consumers would not be able to reasonably avoid the substantial monetary injury imposed by the fees. **An injury is not reasonably avoidable unless consumers are fully informed of the risk and have practical means to avoid it.** Under blanket policies of many depository institutions, Returned Deposited Item fees are charged whenever a check is returned because the check originator has insufficient available funds in their account, the check originator instructs the originating depository institution to stop payment, or the check is written against a closed account. But **a consumer depositing a check would normally be unaware of and have little to no control over whether a check originator has funds in their account, will issue a stop payment instruction, or has closed the account**. Nor would a consumer normally be able to verify whether a check will clear with the check originator's depository institution before depositing the check or be able to pass along the cost of the fee to the check originator.

87 FR 66940, 66941 (emphases added).

19.     The CFPB primarily addressed the lack of benefit and disproportionality associated with such fees, finding that "[c]heck processing is a service made broadly available to all depositors of checks, and *there is no separate benefit to consumers from having a deposited check returned, as opposed to paid*." *Id.* The CFPB further found that these fees are not "well-tailored to recoup costs" because "the fee is charged to depositors even where the depository institution incurs no such loss from the returned transaction, and institutions usually do not collect the fee in those limited circumstances where they actually incur a loss." *Id.* The CFPB has clearly signaled its intention to impose stricter oversight and raise legal challenges against those unfair and predatory practices.

20.     Bank of America conducts a large retail webbing across the country. Within their web, Bank of America offers a wide variety of services, from opening deposit accounts, including a checking and savings account to customers like Plaintiff and the putative Class and Sub-class members.

21.     In connection with opening a direct account with Bank of America, each customer sustains a "Deposit Agreement" ("Deposit Agreement"). This Agreement forms the contract between Bank of America and the customer and governs the terms and conditions of each deposit account held with Bank of America. Furthermore, each customer must accept the terms of the Agreement in order to open and maintain a deposit account with Bank of America.[3]

22.     The Deposit Agreement notes that if a cashed or deposited item is returned to Bank of America "at any time for any reason by the bank on which is drawn or any collecting bank … *[w]e may charge you a fee for each returned item*." *Id.* at 28.

23.     Generally, a customer depositing a check anticipates receipt of the funds. Unfortunately, external factors can lead to a deposit being returned paid. This can occur due to the sender's account insufficiency, a stop payment ordered by the sender, or even processing errors. Therefore, these unforeseeable circumstances can expose the depositor to unfair and unavoidable financial repercussions.

24.     Consumers attempting to deposit funds, like Plaintiff, lacked any control on the outcome of the transaction, and could not protect themselves against any action taken against them by Bank of America. Consumers have no way of verifying whether the sender's account actually contains the amount quoted on the check.

---

3 See Bank of America Deposit Agreement, effective November 1, 2019, The Agreement for Your Account, at 2, attached hereto as Exhibit A ("Deposit Agreement").

25.     Therefore, Bank of America's blanket policy of charging Returned Item Chargeback Fees on all returned deposits, regardless of the origin of the check or the cause of its return, is unjust because it penalizes consumers for circumstances outside of their control.

## II.     BANK OF AMERICA CHARGED PLAINTIFF DEPOSITED ITEM RETURN FEES

### A.     <u>Plaintiff Regina Sidik</u>

26.     Plaintiff Regina Sidik alleges that Defendant charged Returned Item Chargeback Fees because such check could not be processed against the originator's account.

27.     Plaintiff Regina Sidik's account was located in the State of South Carolina at the time she opened the account and remains so to this day.

28.     On or about March 1, 2024, she attempted to deposit a check into her Bank of America account.

29.     At the time she attempted to deposit the check into her Bank of America account, she had no reason to believe that the check would be returned unpaid.

30.     On or around March 1, 2024, to her surprise and by no fault of her own, the check she deposited was returned unpaid. Bank of America charged her a Returned Item Chargeback Fee of $12.

31.     Because the $12 Returned Item Chargeback Fee which Bank of America charged Ms. Sidik was assessed pursuant to Bank of America's blanket policy of assessing such fees irrespective of the facts and circumstances surrounding her attempt to deposit the check into her account, the Returned Item Chargeback Fee was unjust and unlawful.

<u>CLASS ACTION ALLEGATIONS</u>

32.     Plaintiff brings this action on behalf of herself and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined

7

as follows:

> **Nationwide Class (**the **"Class")**
> All individuals who, during the applicable statute of limitations, had or have
> Accounts with Bank of America and were charged a Deposited Item Return Fee by
> Bank of America.
>
> **South Carolina State Subclass** (the **South Carolina Sub-class")**
> All individuals who, during the applicable statute of limitations, had or have
> Accounts with Bank of America located in South Carolina and were charged a
> Deposited Item Return Fee by Bank of America.
>
> **North Carolina State Subclass** (the **North Carolina Sub-class")**
> All individuals who, during the applicable statute of limitations, had or have
> Accounts with Bank of America located in North Carolina and were charged a
> Deposited Item Return Fee by Bank of America.

33.     Excluded from the Class and Sub-classes is Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

34.     Plaintiff reserves the right to modify or amend the definitions of the proposed Class and Sub-classes before the Court determines whether certification is appropriate.

35.     The particular members of the (i) Nationwide Class, (ii) South Carolina Subclass, and (iii) North Carolina Subclass are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from public records.

36.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

37.     The proposed Classes are so numerous that the joinder of all members is impracticable.

38.     This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

39.     Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

**Typicality: Fed R. Civ. P. 23(a)(3)**

40.     Plaintiff's claims are typical of the claims of the members of the Class and Sub-Class, because, inter alia, all Class and Sub-class members have been injured through the uniform misconduct described above and were charged improper and deceptive fees as alleged herein. Moreover, Plaintiff's claims are typical of the Class and Sub-class members' claims because Plaintiff is advancing the same claims and legal theories on behalf of themselves and all members of the Class and their respective Sub-class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Sub-classes.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

41.     Plaintiff will fairly and adequately protect the interest of the members of the Class and Sub-classes. Plaintiff and the members of the Class and Subclasses each maintained an account with Defendant and were harmed by Defendant's misconduct in that they were assessed unfair Returned Item Chargeback Fees. Plaintiff will fairly and adequately represent and protect

the interest of the Class and Sub-class and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interest antagonistic to those of the Class or Sub-classes, and Defendant has no defenses unique to Plaintiff.

**Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)**

42. A class action is superior to all other available means for the fair and efficient adjudication of claims of Plaintiff and Class Members. Questions of law and fact common to all Class Members predominate over questions affecting only individual Class Members. The damages or other financial detriment suffered by individual Class and Sub-class members is relatively small compared to the burden and expense that would be incurred by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class or one of the Sub-classes, on an individual basis, to obtain effective redress for the wrongs committed against him or her. Further, even if the Class or Sub-class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. On the other hand, the class action device provides the benefits of adjudication of these issues in a single proceeding, economics of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

43. Plaintiff seeks monetary damages, including compensatory damages on behalf of the Class and Sub-classes, and other equitable relief on grounds generally applicable to the entire Class and the Sub-classes, to enjoin and prevent Defendant from engaging in the acts described. Unless a Class and Sub-class is certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiff and the members of the Class and Sub-classes will have

suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from these alleged violations, and the members of the Class and Sub-classes, in addition to the general public, may continue to be unfairly treated.

44.     Defendant has acted and refused to act on grounds generally applicable to the Class and the Sub-classes, making final injunctive relief appropriate with respect to the Class as a whole.

**Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)**

45.     This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a.  Whether Defendant's assessment of Returned Item Charged Fees within the applicable statute of limitations was unfair, deceptive, or misleading;

b.  Whether the Defendant breached the Deposit Agreement with Plaintiff and the Class by charging an undisclosed Deposited Item Return Unpaid Fee;

c.  Whether Defendant was unjustly enriched as a result of charging Plaintiff and the Class the Returned Item Charged Fees;

d.  Whether Defendant's conduct, as alleged herein, constitutes a violation of South Carolina's Unfair Trade Practices Act, codified at S.C. Code Ann. § 39-5-10;

e.  Whether Defendant's conduct, as alleged herein, constitutes a violation of North Carolina's Unfair and Deceptive Trade Practices Act, codified at N.C. Gen. Stat. § 75-1.1;

f.  The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

g.  Whether Plaintiff and the Class and Sub-classes are entitled to declaratory and injunctive relief and the nature of that relief.

**CAUSES OF ACTION**

**COUNT I**
**BREACH OF CONTRACT**
**(On behalf of Plaintiff and the Class)**

46.     Plaintiff repeats and realleges each and every allegation mentioned in Paragraphs

1-45 as if fully set forth herein.

47.     Plaintiff brings this count on behalf of herself and members of the Class against Defendant.

48.     Plaintiff and each member of the Class entered into a uniform Deposit Agreement with Consumer Schedule with Defendant that governs the assessment of fees for certain banking services.

49.     Plaintiff and each member of the Class have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms of the Deposit Agreement, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

50.     Defendant breached the express terms of the Deposit Agreement by, inter alia, assessing Returned Item Charged Fees because they were not authorized to charge these fees in the amount charged within the Deposit Agreement.

51.     As a result of Defendant's breach of the Deposit Agreement, Plaintiff and the members of the Class have been damages in an amount to be proved at trial and seeks relief as a set forth in the Prayer below.

## COUNT II
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (On behalf of Plaintiff and the Class)

52.     Plaintiff repeats and realleges Paragraphs 1-45 as if fully set forth herein.

53.     Plaintiff brings this count on behalf of himself and the Classes against Defendant.

54.     Plaintiff and each member of the Class entered into a uniform Deposit Agreement with Consumer Schedule with Defendant that governs the assessment of fees for certain banking services.

55.     A covenant of good faith and fair dealing is implied in Plaintiff's and members of the Class's Deposit Agreements with Defendant. Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitutes examples of bad faith in the performance of the contracts.

56.     The material terms of the Deposit Agreement therefore included the implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in exercise of fair dealing, deal with Plaintiff and each member of the Class fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure the rights and benefits under the contract of Plaintiff and the members of the Class.

57.     Plaintiff and the members of the Class have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contract, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

58.     As alleged herein, Defendant breached the implied covenant of good faith and fair dealing by charging Plaintiff and the members of the Class Returned Item Charged Fees for attempting to deposit checks that could not be deposited irrespective of the depositor's attempt to deposit the check into their account.

59.     Defendant's actions to augment its revenue from Returned Item Charged Fees impedes the right of Plaintiff and the members of the Class from receiving benefits that they reasonably expect to receive under the contract, as the money entrusted to Defendant for their

banking activities was stolen because of the undisclosed fee.

60.      Upon information and belief, Defendant's actions were performed in bad faith, in that purpose behind the practices and policies alleged herein was to increase Defendant's revenue from Returned Item Charged Fees at the expense of their customers, which completely evades Plaintiff and the members of the Class's reasonable expectations.

61.      Plaintiff and the members of the Class have sustained damages as a result of the Defendant's conduct as alleged herein.

62.      As a result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and the members of the Class have been damaged in an amount to be proved at trial and seek relief as set forth in the Prayer below.

**COUNT III**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Class)**

63.      Plaintiff incorporates paragraphs 1-45 as if fully set forth herein.

64.      Plaintiff brings this count on behalf of herself and the Classes against Defendant.

65.      Plaintiff and members of the Class were, and many continue to be, customers of Defendant with deposit accounts. They reasonably believed that Bank of America would not charge them unreasonable fees beyond their control. Plaintiff and members of the Class suffered financial losses when they were charged Returned Item Chargeback Fees in the form of funds deducted from their accounts.

66.      By charging Returned Item Chargeback Fees, Defendant unjustly enriched itself by taking a benefit—a $12 charge each time an item was returned—from each of their customers' accounts, regardless of the cause, without providing any additional service or value to Plaintiff and members of the Class. Defendant has accepted and retained these benefits even though Defendant failed to provide any service or product to the customer and failed to provide any

manner to avoid these fees, thereby making Defendant's retention unjust.

67.     By its wrongful acts and omissions described herein, including charging fees for actions beyond the customer's control, and for which consumers had absolutely no way of avoiding, Defendant was unjustly enriched at the expense of Plaintiff and the members of the Class.

68.     Plaintiff and the Class's detriment, and Defendant's enrichment, were related and flowed from the wrongful conduct alleged in this Complaint.

69.     Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and the Class members. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein.

70.     Plaintiff and the members of the Class have been damaged as a direct and proximate result of Defendant's unjust enrichment.

71.     Plaintiff and the members of the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

72.     As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and the members of the Class are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

## COUNT IV
## VIOLATION OF SOUTH CAROLINA'S UNFAIR TRADE PRACTICES ACT ("UTPA")
### S.C. Code Ann. § 39-5-10
### (Plaintiff Sidik and on behalf of herself and the South Carolina Subclass)

73.     Plaintiff Sidik incorporates paragraphs 1-45 as if fully set forth herein.

74.     Plaintiff Sidik brings this count on behalf of herself and the South Carolina Classes

against Defendant.

75.     Plaintiff Sidik maintained a Bank of America account located in South Carolina, pursuant to the Deposit Agreement, during the applicable statute of limitation period.

76.     The South Carolina Deceptive Trade Practices Act render "unfair or deceptive trade practices unlawful. It is the intent of the legislature that in construing the Act's prohibition against unfair and deceptive trade practices the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to § 5(a)(1) of the Federal Trade Commission Act." Section 39-5-20(b).

77.     Defendant imposed unlawful, unconscionable, and predatory fees on its customers in the form of Returned Item Chargeback Fees, which their customers could do nothing to avoid. By imposing these fees, which provided no service or product to its customers, including Ms. Sidik, and the members of the South Carolina Sub-class, Defendant engaged in unfair business practice in violation of the UTPA.

78.     Defendant's Returned Item Chargeback Fees—charged in the regular course conducting trade and commerce—constitute deceptive practices and "unconscionable practices" under the UTPA.

79.     Under the CFPA, an "unfair" act or practice is one that "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and "such substantial injury is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C. § 5531(c)(1).

80.     The CFPB—through Bulletin 2022-06—has determined that Returned Item Chargeback Fees, such as those charged by Bank of America, are materially unfair and deceptive because they cause substantial injury to consumers and fall within the CFPA's definition of unfair acts and practices because such fees cause substantial financial injury to accountholders, are not

16

reasonably avoidable by accountholders, and do not provide a benefit that outweighs the injury they cause.

81.     Thus, pursuant to the CFPB's Bulletin 2022-06, Defendant's practice of charging Returned Item Chargeback Fees is deceptive and unfair and constitutes an unconscionable commercial practice in violation of the UTPA.

82.     Plaintiff Sidik and all South Carolina Sub-class members sustained actual damages as a result of Defendant's unfair practice. The actual damage is measured by the amount of the Returned Item Chargeback Fees charged by Defendant. The actual damages sustained by Plaintiff Sidik and all South Carolina Sub-class members were caused by Defendant's unfair practice of charging Returned Item Chargeback Fees. In other words, had Defendant not engaged in the unfair practice of charging Deposited Item Return Unpaid Fees, Plaintiff Sidik and the South Carolina Sub-class members would not have sustained damages.

83.     Plaintiff Sidik and the other members of the South Carolina Sub-class risk irreparable injury as a result of Defendant's acts and omissions in violation of the South Carolina UTPA, and these violations present a continuing risk to Plaintiff Sidik and the members of the South Carolina Sub-class and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

84.     As a direct and proximate result of Defendant's violations of the South Carolina UTPA, Plaintiff Sidik and the other members of the South Carolina Sub-class have suffered injury-in-fact and/or actual damage.

85.     As a result of Defendant's unlawful acts as alleged herein, Plaintiff Sidik and the South Carolina Sub-class have been damaged in the amount of the Returned Item Chargeback Fees collected by Defendant from customers with accounts located in South Carolina. Plaintiff Sidik and the South Carolina Sub-class are entitled to recovery of their ascertainable losses, treble

damages, and reasonable attorneys' fees and costs pursuant to S.C. Code Ann. § 39-5-10.

## COUNT V
### VIOLATION OF NORTH CAROLINA'S UNFAIR AND DECEPTIVE TRADE PRACTICES ACT ("UDTPA")
### N.C. GEN. STAT. § 75-1.1
### (Plaintiff Sidik and on behalf of herself and the North Carolina Subclass)

86.     Plaintiff Sidik incorporates paragraphs 1-45 as if fully set forth herein.

87.     Plaintiff Sidik brings this count on behalf of herself and the North Carolina Subclass Classes against Defendant.

88.     Plaintiff Sidik maintained a Bank of America account located in South Carolina, pursuant to the Deposit Agreement, during the applicable statute of limitation period.

89.     North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), subsection §75-1, proscribes "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a).

90.     Defendant engages in "commerce" as defined in N.C. Gen. Stat. § 75-1.1(b).

91.     Members of the North Carolina Sub-class are "consumers" as defined in N.C. Gen. Stat. § 75-1.1(a).

92.     Defendant imposed unlawful, unconscionable, and predatory fees on its customers in the form of Returned Item Chargeback Fees, which their customers could do nothing to avoid.

93.     By imposing these fees, which provided no service or product to its customers, including Ms. Sidik, and the members of the North Carolina Sub-class, Defendant engaged in unfair business practice in violation of the UDPTA.

94.     Defendant's Returned Item Chargeback Fees—charged in the regular course conducting trade and commerce—constitute deceptive practices and "unconscionable practices" under the UDTPA.

95.     Under the CFPA, an "unfair" act or practice is one that "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and "such substantial injury is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C. § 5531(c)(1).

96.     By imposing these fees, which the CFPB has deemed "junk fees," and which provided no service or product to its customers, including Plaintiff Sidik and the members of the North Carolina Sub-class, Defendant engaged in an unfair business practice in violation of the UDPTA.

97.     Charging Returned Item Chargeback Fees is a predatory practice that impacts thousands, if not millions, of consumers throughout North Carolina and the country, and they disproportionately impact vulnerable consumers. These blanket fees exploit consumers and can reinforce financial inequality. Thus, Defendant's actions, as alleged herein, affect the public.

98.     These charges, which were automatically debited from consumers' accounts, were unilaterally imposed, are deceptive, unfair, predatory in nature, and unconscionable. The CFPB—through Bulletin 2022-06—has determined that Returned Item Chargeback Fees, such as those charged by Bank of America, are materially unfair and deceptive because they cause substantial injury to consumers and fall within the CFPA's definition of unfair acts and practices because such fees cause substantial financial injury to accountholders, are not reasonably avoidable by accountholders, and do not provide a benefit that outweighs the injury they cause.

99.     Returned Item Chargeback Fees is deceptive and unfair and constitutes an unconscionable commercial practice in violation of the UDTPA.

100.    As a result of Defendant's actions, Plaintiff Sidik and the members of the North Carolina Sub-class sustained actual damages. That actual damage is measured by the amount of the Returned Item Chargeback Fees charged by Defendant.

101. Plaintiff Sidik and the members of the North Carolina Sub-class are entitled to actual damages, as well as injunctive relief, reasonable attorneys' fees and costs, punitive damages, and any other relief the Court deems proper, pursuant to N.C. Gen. Stat. § 75-1.1(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant in the form of an Order:

A. Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and naming Plaintiff as a representative of the Class and Plaintiff's undersigned attorney as Class Counsel to represent the Class and Sub-class Members;

B. Naming Plaintiff Sidik as the representative of the South Carolina Subclass and the North Carolina Subclass;

C. Declaring that Defendant's conduct violated the laws referenced herein;

D. Finding in favor of Plaintiff and the Class and Sub-classes on all counts asserted herein;

E. Awarding actual, consequential, punitive, statutory, and treble damages;

F. For injunctive relief as pleaded or as the Court may deem proper;

G. For disgorgement and restitution to Plaintiff and the Class and/or Sub-class members of all monies received or collected from Plaintiff and the Class and/or Sub-class members and all other forms of equitable relief;

H. Costs including reasonable attorney's fees, court costs, and other litigation expenses; and,

I. Any other relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury

trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: July 24, 2024                          Respectfully submitted,

                                              /s/ *Tiffany N. Lawson*
                                              **POULIN | WILLEY | ANASTOPOULO**
                                              Tiffany N. Lawson (N.C. Bar No.: 56719)
                                              32 Ann Street
                                              Charleston, SC 29403
                                              Telephone: (803) 222-2222
                                              Fax: (843) 494-5536
                                              Email: paul.doolittle@poulinwilley.com
                                              cmad@poulinwilley.com

                                              *Attorney for Plaintiff*